IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  03-cv-02073-WDM-PAC

ROBERTA PULSE,
TONYA HOUSE,

       Plaintiff(s),

v.

THE LARRY H. MILLER GROUP,

       Defendant(s).

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Patricia A. Coan, United States Magistrate Judge

       This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.

§2000e, *et seq.*, as amended, and as amended by the 1991 Civil Rights Act, 42 U.S.C.

§1981a.  The following matters are before the court:  (1) Defendants' Motion to Dismiss

or, in the Alternative, for Summary Judgment [filed November 1, 2004]; Plaintiffs' Motion

for Leave to File Amended Complaint [filed November 23, 2004]; and Plaintiffs' 56(g)

Motion to Strike Affidavit [filed February 14, 2005].   The motions are fully briefed. I heard

oral argument on May 26, 2005.

I.

       Plaintiffs filed their original complaint on October 20, 2003 asserting claims of sex

discrimination, hostile work environment, and unlawful retaliation under Title VII, and a

pendent state law defamation claim.  Plaintiffs named one defendant - the Larry H. Miller

Group ("LHM Group").  Plaintiffs allege that LHM Group was their employer at all times relevant.

On November 21, 2003, Judith Holmes, who identified herself as the attorney for "Defendant Larry Miller Corp. - Denver" ("LHM Corp.") waived service on behalf of defendant LHM Group. Defendant LHM Group filed an Answer on February 5, 2004, by and through their counsel, Judith Holmes.  LHM Group states in the Answer that the correct name of the entity that employed the plaintiffs is "The Larry H. Miller Corp. - Denver," a Utah corporation doing business in Colorado. Answer, ¶5.  In the March 4, 2005 Amended Scheduling Order, at 6, defendant advised: "[p]laintiffs' counsel has been notified that the Defendant is incorrectly named in the case caption.  Defense counsel requests that the name be corrected."

On May 21, 2004, plaintiffs filed a motion to join LHM Corp. as a defendant under Rule 20(a). The unopposed motion for joinder was granted on June 29, 2004.  Thereafter, plaintiffs did not file an amended complaint asserting claims against LHM Corp., or serve that entity with a summons and copy of an amended complaint.  Instead, plaintiffs merely added LHM Corp. to the case caption as a party defendant.

II.

Defendant LHM Group moves to dismiss, or for summary judgment on, plaintiffs' Title VII claims on the grounds that LHM Group is not a legal entity capable of being sued and was not the plaintiffs' employer.  Because LHM Group relies on matters outside of

the pleadings to support its motion, I treat the motion as one for summary judgment.[1]

The purpose of summary judgment is to determine whether trial is necessary. *White v. York Int'l. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).   Summary judgment is appropriate under Fed.R.Civ.P. 56(c) when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The movant bears the initial burden to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992).  If this burden is met, the nonmovant must "come forward with specific facts showing that there is a genuine issue for trial as to elements essential to [the nonmovant's claim]." *Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir. 1993)(internal citations omitted).  The nonmovant has the burden to show that there are genuine issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The court views the evidence of record and draws all reasonable inferences in the light most favorable to the nonmovant. *Thomas v. International Business Machines*, 48 F.3d 478, 484 (10th Cir. 1995).  To defeat a properly supported motion for summary judgment, "there must be evidence upon which the jury could reasonably find for the plaintiff." *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490

---

[1]Plaintiffs also rely on matters outside the pleadings in their response brief.

(10th Cir. 1995)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

A.  <u>Is LHM Group a Legal Entity Capable of Being Sued</u>?

Defendant argues that plaintiffs' claims against LHM Group should be dismissed because LHM Group is not a legal entity capable of being sued.

The capacity of a non corporate entity to sue or be sued is determined according to the law of the state in which the district court sits. *See* Fed.R.Civ.P. 17(b).   In Colorado, a loosely formed group cannot litigate, either as a plaintiff or a defendant. *See Hidden Lake Dev. Co. v. District Court*, 515 P.2d 632, 634-35 (Colo. 1973).  An entity not capable of suing or being sued is not a proper party to a lawsuit. *See Roberts v. Colo. State Bd. of Agric.*, 998 F.2d 824, 827 (10th Cir. 1993).

Defendant relies on the following evidence to show that LHM Group is not a legal entity.  The Utah Department of Commerce lists LHM Group as a trade name, active in Sandy, Utah.  (Defs' Ex. 15)   The LHM Group has never operated as a business entity and is not recognized as such by the State of Colorado.  (Affidavit of Richard Dickert Affidavit, attached to Defs' MSJ, at ¶8)  Colorado has never issued LHM Group a Certificate of Good Standing, an Entity ID Number, a business name, trademark, or trade name. (*Id.*; Defs' Ex. 14)   LHM Group has no governing body, no managers, no bank accounts, does not generate business records or a collective financial statement, does not have an Employment Identification Number ("EIN") from the Internal Revenue Service ("IRS"), has never hired employees, and has never issued W-2 statements or payroll checks to the plaintiffs.  (Dickert Affidavit, ¶¶11-12)

The LHM Group is a term used to describe the businesses owned by Larry Miller and his wife, which include sports and entertainment enterprises, restaurants, car dealerships, and real estate holding companies. (Dickert Affidavit, ¶9)  Each company within the LHM Group operates independently and individual company managers do not report to "the Group" regarding the finances, management or operation of the companies.  (*Id.* at ¶¶6, 10) The LHM Group does not exercise any control over the work performed by employees of the individual companies within the Group, or over any other aspect of those businesses.  (*Id.*)

Plaintiffs respond with evidence that the "Larry H. Miller Group of Companies" issued an employee handbook to the plaintiffs.  The employment application plaintiff House completed for the position of finance director at Larry Miller Toyota was on "Larry H. Miller Group of Companies" letterhead. (Defs' MSJ, Exs. 17, 20)  Tony Schnurr, a vice president for the Larry H. Miller Management Company ("LHM Management Co."), testified that "the Larry Miller Group of Companies" issued plaintiff House a check in the amount of $33,212,85.  (Deposition of Tony Schnurr, at 56, Plaintiffs' Ex. 41) The Respondent in the EEOC[2] proceeding, LHM Management Co., admitted that "Tonya House was employed by the Larry Miller Group from March 1999 to June 11, 2001." (Plaintiffs' Response, Ex. 2)  In addition, LHM Group is the policy holder for an employment practices liability policy titled "Management Assurance Policy Declarations"

---

[2]Equal Employment Opportunity Commission.

which lists the "Parent Company" as "Larry H. Miller Group of Companies" in Murray, Utah. (Plaintiffs' Rule 56(g) Motion, Ex. 2)

Although the evidence supporting plaintiffs' position that the LHM Group is a legal entity capable of being sued is slim, I recommend a finding that it is sufficient to demonstrate the existence of a material factual dispute. Accordingly, LHM Group's motion for summary judgment on that ground should be denied.

B.  Plaintiffs' Rule 56(g) Motion to Strike

Plaintiffs urge the court to strike Richard Dickert's affidavit in support of defendants' motion for summary judgment on the ground that Dickert's sworn statement that LHM Group is not a legal entity is false. Plaintiffs argue that the employer practices liability insurance policy held by LHM Group,[3] which policy defendant contends may be used to satisfy a judgment in this case, demonstrates that LHM Group is a legal entity. Plaintiffs also ask the court to sanction defendants for filing the Dickert Affidavit in bad faith.

Defendants respond with the Supplemental Affidavit of Richard Dickert, in which he states that the policyholder, LHM Group of Companies, describes the group of individual companies insured under the policy. (Dickert Affidavit, at ¶4) The policy lists each insured company. (*See* Policy attached to Dickert Affidavit) Dickert states that Larry Miller purchased the group liability policy to insure over fifty companies that he and his

---

[3]A single page from the employment practices liability held by Larry H. Miller Group of Companies is attached to plaintiffs' Rule 56(g) motion as Ex. 2.

wife own in whole or in part because purchasing a single policy was less expensive than purchasing individual policies for each company. (Dickert Affidavit, at ¶7) Each individual company contributes a *pro rata* share of the premium. (*Id.*)

I recommend that plaintiffs' Rule 56(g) motion to strike the Dickert Affidavit be denied because the fact that LHM Group is named as the holder of an insurance policy does not establish conclusively that LHM Group is a legal entity capable of being sued, or that Dickert's statements in his original affidavit were false.

C. <u>Were Plaintiffs Employed by the LHM Group?</u>

Defendant next maintains that plaintiffs cannot maintain their Title VII claims against LHM Group because LHM Group was not the plaintiffs' employer.

To establish a prima facie claim under Title VII, plaintiffs must demonstrate that the named defendant was their employer. *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1361 (10th Cir. 1993).

Richard Dickert, the controller for LHM Management Company, avers that plaintiffs were employed by LHM Corp., a Utah corporation, authorized to do business in Colorado under the trade name "Larry Miller Toyota." (Dickert Affidavit, ¶¶2, 4; Defs' Ex. 10)  The LHM Corp. d/b/a Larry Miller Toyota operated Larry Miller Toyota in Denver until March 2003 when the dealership was sold. (Dickert Affidavit, ¶5)

Defendants maintain that plaintiffs' employment relationship with LHM Corp. d/b/a Larry Miller Toyota is further evidenced by the following. On May 19, 1999, plaintiff Tonya House completed an employment application for the position of finance director at Larry

Miller Toyota. (Defs' Ex. 16)  Plaintiff Pulse filled out the Flexible Benefits Enrollment Form and the Employment Eligibility Verification Form listing "L. Miller Toyota" as her employer. (Defs' Exs. 21, 22) Plaintiffs received their payroll checks and bonuses from the Larry Miller Toyota operating account. (Defs' Exs. 11, 12, 18)   Plaintiffs identified Larry Miller Toyota as their employer on their W-4 forms and received W-2 statements from Larry Miller Toyota. (Defs' Exs. 13, 18)

Plaintiffs respond with the same evidence relied on in support of their position that LHM Group is a legal entity capable of being sued. *See* Section II.A., *supra*. Although the evidence is not substantial, it is sufficient to withstand LHM Group's motion for summary judgment.

III.

LHM Corp. moves to dismiss, or for summary judgment on, plaintiffs' claims against it for lack of subject matter jurisdiction, lack of personal jurisdiction and for failure to sue within the statutory limitations period.  Because LHM Corp. relies on matters outside the pleadings, I treat the motion as one for summary judgment under Rule 56.[4]

A.   <u>Subject Matter Jurisdiction</u>

LHM Corp. argues that the court lacks subject matter jurisdiction over Title VII claims against that entity because plaintiffs did not name LHM Corp. as their employer in their administrative charges of discrimination/retaliation. Instead, plaintiffs named LHM

---

[4]Plaintiffs also rely on matters outside the pleadings in their response.

Management Co. as the sole respondent in the EEOC proceeding.

Section 706(f)(1) of Title VII, 42 U.S.C. §2000e-5(f)(1), provides that an aggrieved party may bring a civil action "against the Respondent named in the [EEOC] charge . . .," after exhausting administrative remedies.  The filing of a timely charge of discrimination with the EEOC is a jurisdictional prerequisite to suit. *Seymore v. Shawyer & Sons, Inc.*, 111 F.3d 794, 799 (10th Cir. 1997).

Plaintiffs filed their EEOC charges against "the Larry Miller Management Company d/b/a Larry Miller Toyota and the Larry Miller Used Car Supermarket" (Defs' Exs. 23, 24, 25) Respondent LHM Management Co. submitted position statements to the EEOC in response to the charges in which respondent stated that "`The Larry Miller Corp. - Denver' is the corporate entity that operates the [Denver car dealerships]."  Respondent also stated in at least one of its position statements that "Tonya House  was employed by the Larry Miller Group."  Plaintiffs did not file any additional EEOC charges against defendant LHM Corp.

Plaintiffs arguably did identify LHM Corp. as a respondent in the EEOC charges by naming Larry Miller Toyota, a trade name for LHM Corp. Notwithstanding, a  plaintiff's failure to bring a Title VII action against the respondent named in the EEOC proceeding does not automatically mandate dismissal of the Title VII action.  Instead, the court should consider whether there is sufficient identity of interest between the administrative respondent and the Title VII defendant so that the defendant had adequate notice of the charge and the EEOC had an opportunity to attempt conciliation. *Romero v. Union Pacific*

9

*Railroad*, 615 F.2d 1303, 1311 (10th Cir. 1980); *Knowlton v. Teltrust Phones, Inc.*, 189 F.3d 1177, 1185 (10th Cir. 1999). Four factors are pertinent to the "identity of interest" inquiry: (1) whether the role of the unnamed party could have been ascertained through reasonable effort by the complainant at the time the EEOC charge was filed; (2) whether the interests of the named respondent and the unnamed party are so similar that, for purposes of conciliation, it would be unnecessary to include the unnamed party in the EEOC proceeding; (3) whether the unnamed party's absence from the EEOC proceeding resulted in actual prejudice to the unnamed party's interests; and (4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named respondent. *Romero*, 615 F.2d at 1311-12 (internal citation omitted).

Plaintiffs argue that there is an identity of interest between LHM Management Co., the respondent named in the EEOC proceeding, and defendants LHM Group and LHM Corp., because those entities are a "single employer."

The identity of interest test is satisfied where the respondent in the EEOC proceeding and the defendant in the Title VII action operated as a "single employer." *Knowlton*, 189 F.3d at 1362. Whether two nominally separate entities constitute a "single employer" requires the court to consider: (1) interrelation of operations; (2) centralized control over labor relations; (3) common management; and (4) common ownership or financial control. *Sandoval v. City of Boulder, Colo.*, 388 F.3d 1312, 1322 (10th Cir. 2004); *Bristol v. Bd. of Cnty. Comm'rs of Cnty of Clear Creek*, 312 F.3d 1213, 1220 (10th Cir.

2002).  Centralized control over labor relations is the dispositive factor, including the right to terminate employment.  *Bristol*, 312 F.3d at 1219-20; *see, also, Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1070 (10th Cir. 1998)("The critical question is, 'what entity made the final decisions regarding employment matters related to the person claiming discrimination?'")(internal quotations and citations omitted); *Frank*, 3 F.3d at 1363 (plaintiff must show that one entity controlled the day to day employment decisions of the other entity).

Plaintiffs point to the following evidence to support their single employer theory of liability.  LHM Management Co.'s vice president of operations, Pat Kroneberger, and human resources ("HR") director, Carolyn Ashburn, referred to "LHM Group" and "Larry H. Miller Management" interchangeably during their depositions. (Deposition of Pat Kroneberger, at 14-16, Plaintiffs' Response, Ex. 5; Deposition of Carolyn Ashburn, at 6, 8-9, Plaintiffs' Response, Ex. 6)  Tony Schnurr, vice president of the automotive division of LHM Management Co., characterized LHM Management Co. as a division of LHM Corp. during his deposition.  (Schnurr Deposition, at 7, Plaintiffs' Response, Ex. 7).

Interrelation of Operations.  Bob Cockerham, who was the general manager of Larry Miller Toyota at times relevant, spoke to Schnurr, Ashburn and other persons "in the corporate office" on a daily basis about operational issues.  (Deposition of Bob Cockerham, at 38-39, Plaintiffs' Response, Ex. 8)   Cockerham also received written policies from "the group" when he managed Larry Miller Toyota in Denver. (Cockerham Deposition, at 66, Plaintiffs' Response, Ex. 20)

11

Dickert conducted mini audits at Larry Miller Toyota in 2000.  (Dickert Deposition, at 8, Plaintiffs' Response, Ex. 17)   The purpose of the mini audits is to ensure compliance with corporate policies. (Kroneberger Deposition, at 31-32; Plaintiffs' Response, Ex. 16) Corporate managers review the mini audits and policies and procedures with the general managers of the dealerships. (*Id.*) Dickert maintains the mini audit records for the Larry Miller Denver dealerships. (Deposition of Moneca Allvera, at 170, Plaintiffs' Response, Ex. 17)

Schnurr, a vice president for LHM Management Co., testified that he produces a monthly financial statement for "all our entities." (Schnurr Deposition, at 74, Plaintiffs' Response, Ex. 15)   Kroneberger, the operations manager and finance director for the automotive division of LHM Management Co., oversees the operations of nine dealerships and works with the dealerships' finance managers.   (Kroneberger Deposition, at 22-23, Plaintiffs' Ex. 13)

All of the dealerships report to a centralized location in Sandy, Utah, where it says "Larry H. Miller Group" on the wall.  (Allvera Deposition, at 186, Plaintiffs' Ex. 14)  LHM Group, LHM Corp., and the Larry H. Miller Management Co. share the same address in Sandy, Utah. (Plaintiffs' Response, Ex. 9)

Schnurr appeared as defendant LHM Group's representative with final settlement authority at a court-ordered settlement conference in October 2004.

<u>Centralized control over labor relations</u>.   Schnurr instructed Cockerham to terminate plaintiff Pulse's employment at the dealership after Cockerham reported

Pulse's performance problems to Schnurr and Dickert. (Cockerham Deposition, at 52, 70, Plaintiffs' Response, Exs. 21, 22)  When HR director Ashburn received a complaint from plaintiff House regarding an interim manager at Larry Miller Toyota, she contacted Schnurr who conducted an investigation.  (Schnurr Deposition, at 14-15, Plaintiffs' Response, Ex. 25)  Schnurr recommended to the President of Larry H. Miller Automotive Group that the interim manager not be allowed to continue managing the Denver dealership because of plaintiff House's claim.  (Schnurr Deposition, at 15, Plaintiffs' Response, Ex. 25)

Additionally, LHM Management Co. decides who will manage the dealerships. (Schnurr Deposition, at 38-39, Plaintiffs' Ex. 29) Schnurr re-hired a customer relations manager for the Denver Toyota dealership after the general manager terminated her employment.  (Schnurr Deposition, at 41, Plaintiffs' Ex. 30)  Schnurr has authority to approve the transfer of an employee between the dealerships if the general managers could not agree. (Ashburn Deposition, at 29, Plaintiffs' Ex. 32) The LHM Group recruited Cockerham for the position of general manager.  (Schnurr Deposition, at 46, Plaintiffs' Ex. 31)

LHM Management Co. HR director Ashburn, and "the attorneys for the Larry H. Miller Group" developed several policies, guidelines, and employment-related forms used by the managers of the Denver dealerships.  (Ashburn Deposition, at 34, 51-52, Plaintiffs' Exs. 33, 34)  Ashburn traveled to Denver twice a year to conduct human resources training at the dealerships.  (Schnurr Deposition, at 26-27, Plaintiffs' Ex. 26;

13

Kroneberger Deposition, at 7, Plaintiffs' Ex. 27)

Schnurr provided information in response to plaintiffs' charges of discrimination with the EEOC. (Schnurr Deposition, at 59, Plaintiffs' Ex. 39)

Common management. Schnurr, a senior vice president at LHM Management Co., also served as interim general manager at the Denver dealerships while plaintiffs were employed at Larry Miller Toyota. (Schnurr Deposition, at 4, 50-51, Plaintiffs' Exs. 11, 12)

Common ownership or financial control. Larry Miller owns Larry Miller Toyota - Denver and the LHM Group of Companies. (Cockerham Deposition, at 12, Plaintiffs' Response, Ex. 14; Defs' MSJ, Ex. 26)

I recommend a finding that plaintiffs have submitted sufficient evidence to show the existence of a genuine issue of material fact about whether LHM Group, LHM Corp. and LHM Management Co. constitute a single employer so as to satisfy Title VII's administrative exhaustion requirement. On the critical factor of centralized control over labor relations, the evidence shows that LHM Management Co. vice president Schnurr ordered that plaintiff Pulse, an employee of LHM Corp. d/b/a Larry Miller Toyota, be fired. Schnurr also investigated House's complaint against the interim general manager at the Toyota dealership and recommended that the interim manager no longer be allowed to manage that store.[5]   Cockerham, a general manager at Larry Miller Toyota who was

---

[5]Plaintiff House claims that she was constructively discharged.

recruited by Schnurr, was in regular contact with Schnurr and others at LHM Management Co. regarding dealership operational decisions. The record also shows that Schnurr rehired a Denver dealership employee who had been fired by the store's general manager. Further, LHM Management Co. conducts mini audits on each company within the LHM Group to ensure their compliance with corporate policies. In addition, the LHM Management Co.'s HR Director travels to Denver twice a year to train the dealership employees on implementation of corporate human resources policies.

Plaintiffs have also presented some evidence in support of the other factors to show that there is an identity of interest between LHM Group, LHM Corp. and LHM Management Co.

Accordingly, plaintiffs' Title VII claims against LHM Corp. should not be dismissed for lack of subject matter jurisdiction.[6]

## B.   Personal Jurisdiction

LHM Corp. next argues that the court lacks personal jurisdiction over LHM Corp. because plaintiffs never filed an Amended Complaint asserting claims against LHM

---

[6]I note that plaintiffs' claims against LHM Group are likewise not subject to dismissal for failure to name LHM Group as the respondent in the EEOC proceeding. In addition to the evidence discussed in the text above, the record also shows the following. The "Larry H. Miller Group of Companies" issued an employee handbook to the plaintiffs. (Defs' Ex. 17) The employment application plaintiff House completed for the position of finance director at Larry Miller Toyota was on "Larry H. Miller Group of Companies" letterhead. (Defs' Ex. 20) Schnurr testified in his deposition that "The Larry Miller Group of Companies" issued plaintiff House a check in the amount of $33,212,85. (Schnurr Deposition, at 56, Plaintiffs' Ex. 41) The Respondent in the EEOC proceeding, LHM Management Co., admitted that "Tonya House was employed by the Larry Miller Group from March 1999 to June 11, 2001." (Plaintiffs' Response, Ex. 2) Moreover, LHM Management Co. vice president Kroneberger and HR director Ashburn did not distinguish between LHM Group and LHM Management Co. in their deposition testimony.

Corp. and have not served that entity with a summons or a waiver of service of process.

Plaintiffs bear the burden to establish that the court has personal jurisdiction over the defendants. *See Intercon, Inc. v. Bell Atlantic Internet Solutions,* 205 F.3d 1244, 1247 (10th Cir. 2000).

Fed.R.Civ.P. 21 provides that "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." If the court grants permission to add a party, the plaintiff must comply with the requirements of Rules 3 and 4 pertaining to service of a summons and complaint on the added party. *See* 7 Wright, Miller & Kane, Federal Practice and Procedure*:* Civil 3d §1688 (2001)(discussing Rule 21); *Landers Seed Co., Inc. v. Champaign Nat. Bank*, 15 F.3d 729, 732 (7th Cir. 1994)(citing *Wright and Miller*); *Sarne v. Fiesta Motel*, 79 F.R.D. 567, 570 (D.C.Pa. 1978)(same).

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l v. Rudolf Wolff* & Co., 484 U.S. 97, 104 (1987)(internal quotation omitted); *see, also,* 5B Wright & Miller, Federal Practice and Procedure: Civil 3d §1353 (2004)(discussing Rule 12(b)(5) and stating that service of process is the means by which a federal court gives notice to the defendant and asserts jurisdiction over him); *see, also,* 4A Wright & Miller, Federal Practice and Procedure: Civil 3d §1093 (2004)(discussing Rule 4(c)(1) and stating that the court has no power to proceed to judgment against a named defendant, nor is the named defendant obliged to answer or defend, until service has been made).

16

The requirement of service of process ensures that the addition of an adverse party comports with due process. In *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 466 (2000), the Supreme Court stated:

> The propriety of allowing a pleading alteration depends not only on the state of affairs prior to amendment but also on what happens afterwards. Accordingly, Rule 15 both conveys the circumstances under which leave to amend shall be granted and directs how the litigation will move forward following an amendment. When a court grants leave to amend to add an adverse party after the time for responding to the original pleading has lapsed, the party so added is given `10 days after the service of the amended pleading to plead in response. <u>Fed. Rule Civ. Proc. 15(a)</u>. This opportunity to respond, fundamental to due process, is the echo of the opportunity to respond to original pleadings secured by Rule 12. See <u>Fed. Rule Civ. Proc. 12(a)(1)</u>. Thus, Rule 15(a) assumes an amended pleading will be filed and anticipates service of that pleading on the adverse party.

Although Rules 20 and 21 do not provide expressly for the filing of an amended complaint and for service of that pleading on the added party, the same due process and jurisdictional concerns apply. Under either Rule 15(a) or Rule 20, a new party is being added who must have notice of the claims against it and an opportunity to be heard before an adverse judgment is entered. Because LHM Corp. was not served with a summons and copy of an amended pleading, and did not execute a waiver of service after being joined as a defendant,[7] the court lacks personal jurisdiction over LHM Corp.,

---

[7] The waiver of service signed by defense counsel on November 21, 2003, as "attorney for defendant Larry Miller Corp. - Denver," was a waiver on behalf of defendant LHM Group. Although LHM Group and LHM Corp. share the same counsel, the November 2003 waiver cannot be construed as a waiver of service by LHM Corp. because that entity was not joined as a defendant

unless the defense has been waived.  The fact that LHM Corp. had actual notice of the lawsuit does not satisfy service of process requirements.  *See Mid-Continent Wood Prods., Inc. v. Harris*, 936 F.2d 297, 301 (7th Cir.1991); *Way v. Mueller Brass Co.*, 840 F.2d 303, 306 (5th Cir.1988).

Plaintiffs argue that LHM Corp. waived any objection to lack of personal jurisdiction by filing motions seeking affirmative relief in the case before asserting a Rule 12(b)(2) defense.

The requirement of personal jurisdiction is an individual right which can be waived.  *See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982).  Under Fed.R.Civ.P. 12(h), a defendant waives the defense of lack of personal jurisdiction or insufficiency of process by failing to assert those defenses in a pre-Answer motion or in the Answer.  "If a party files a pre-answer motion and fails to assert the defenses of lack of personal jurisdiction or insufficiency of service, he waives those defenses." *Fed.Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 175 (10th Cir. 1992).

Plaintiffs' motion to join LHM Corp. as a defendant was granted on June 29, 2004. Because LHM Corp. was not served with a summons and amended complaint, it was not obligated to file an Answer.  The file reflects that LHM Corp. was named as a defendant in the caption of one pleading with the court – a  motion for enlargement of

---

until June 2004.

18

time to extend the discovery cutoff to depose a witness, on September 7, 2004 - before

LHM Corp. filed a motion to dismiss based on lack of personal jurisdiction on November

1, 2004. The body of the motion refers only to "defendant" in the singular.

A party does not waive Rule 12 defenses by filing a motion which relates to non

defensive matters not covered in Rule 12. *See United States v. 51 Pieces of Real*

*Property Roswell, New Mexico*, 17 F.3d 1306, 1314 (10th Cir. 1994)(concluding that

motion for extension of time in which to file a claim in a forfeiture action was not a

"defensive move[ ]" triggering Rule 12(h)); *Moore v. Dunham*, 240 F.2d 198, 200 (10th Cir.

1957) (holding  that defendant did not waive Rule 12(b) defenses relating to lack of

service of process by requesting a jury trial and stay of proceedings prior to filing his Rule

12(b) motion).

Plaintiffs also assert that LHM Corp. waived the personal jurisdiction defense by

answering the plaintiffs' interrogatories and by participating in a settlement conference.

Because Rule 12(b) defenses should be presented at the first available

opportunity, a party may waive a defense of lack of personal jurisdiction by its conduct in

the litigation.  *See Yeldell v. Tutt*, 913 F.2d 533, 539 (8th Cir. 1990)(defendant waived

personal jurisdiction defense by participating in discovery, filing various motions, and

participating in five-day trial before seeking a ruling on personal jurisdiction defense

asserted in Answer); *Hamilton v. Turner*, 197 F.3d 58, 61-62 (2d Cir. 1999)(defendant

waived personal jurisdiction defense by engaging in discovery and settlement

conferences for a four-year period after initially raising the defense in the Answer); *Bel-*

*Ray Co., Inc. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 443-44 (3rd Cir. 1999)(defendants waived personal jurisdiction defense by filing motions for summary judgment on their counterclaim before seeking relief on the personal jurisdiction defense asserted in their Answer); *see, also, Hunger United States Special Hydraulics Cylinders Corp. v. Hardi-Tynes Manuf. Co.*, 203 F.3d 835 (Table), 2000 WL 147392 (10th Cir. (Utah) 2000) (unpublished)[8](concluding that defendant's actions in filing a cross claim, engaging in settlement negotiations, and in entering into a stipulation to dismiss all claims except for its cross claim constituted waiver of personal jurisdiction defense, even though defendant asserted the defense in its Answer to cross claim).

The record reflects that LHM Corp. answered the plaintiffs' first set of interrogatories on June 7, 2004, before it was joined as a defendant. (*See* Plaintiffs' Response, Ex. 4) However, LHM Corp. also answered the plaintiffs' second set of interrogatories on July 20, 2004, on its own behalf. *See* Defendants' Supplemental Answers to Plaintiffs' Second Set of Interrogatories, signed July 20, 2004, attached to Defendant' Supplemental Authority, filed May 23, 2005.

I recommend a finding that LHM Corp. waived the defense of lack of personal jurisdiction by failing to raise it before actively participating in discovery by responding to plaintiffs' interrogatory requests.[9]

---

[8]A copy of the *Hunger* case is attached to the Recommendation.

[9]The court's file is silent about whether Tony Schnurr, the defendant's representative at the court-ordered settlement conference in October 2004, appeared on behalf of both LHM Group and LHM Corp. However, LHM Corp.'s affirmative conduct in answering plaintiffs' interrogatory requests

C.   <u>Statute of Limitations</u>

Defendants next contend that plaintiffs' Title VII claims against LHM Corp. are barred by the statute of limitations and the requirements of "relation back" under Rule 15(c)(3) have not been satisfied.

The EEOC issued Notices of Right to Sue to plaintiffs for their hostile work environment and sex discrimination claims on August 12, 2003 and for the retaliation claims on August 22, 2003.  (Defs' Ex. 28)  An individual seeking relief under Title VII must file a lawsuit within ninety days of receipt of the EEOC's Notice of Right to Sue.  42 U.S.C. §2000e-5(f)(1).  Including three days for mailing, plaintiffs were required to file their Title VII sex discrimination and hostile work environment claims actions in federal court on or before November 13, 2003 and their retaliation claims before November 23, 2003.  Thus, the limitations period had expired when plaintiffs moved to join LHM Corp. as a defendant in April 2004.

An amendment that "changes the party or the naming of the party" will relate back to the date of the original complaint if the three requirements of Rule 15(c)(3) have been satisfied. *Watson v. Unipress, Inc.*, 733 F.2d 1386, 1389 (10th Cir. 1984).  First, the claims against the new party must arise out of the conduct, transaction or occurrence set forth in the original complaint.  Second, the new party must have received notice of the action within the period provided by Rule 4(m) for serving the original complaint (so that the new

---

on its own behalf is sufficient to subject that entity to the personal jurisdiction of the court.

defendant will not be prejudiced in maintaining a defense on the merits).  Third, the plaintiff must demonstrate that during the Rule 4(m) period, the new party "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party." (Emphasis supplied.)

Plaintiffs maintain that the failure to name LHM Corp. as a defendant in the original complaint was a mistake because defendant did not advise plaintiffs of its position that LHM Group was not a legal entity until after the limitations period had passed.  Plaintiffs emphasize that they relied on Respondent LHM Management Co.'s admission in the EEOC proceeding that plaintiff House was employed by the LHM Group.  Plaintiffs also relied on the Utah Secretary of State's records showing LHM Group was an "active" trade name at the time the complaint was filed and on employment documents given to plaintiffs which were on LHM Group of Companies letterhead.

LHM Corp. responds that the failure to name LHM Corp. in the original complaint was not a "mistake" because plaintiffs were advised in the EEOC proceeding that LHM Corp. was the corporate entity that operated Larry Miller Toyota, the car dealership where plaintiffs were employed. (*See* Defs' Exs. 26, 27) Defendants contend that plaintiffs' counsel made a conscious choice not to sue LHM Corp. at the outset of this litigation.[10]

Initially, I recommend a finding that the term "changes the party" in Rule 15(c)(3)

---

[10]Defendants do not take issue with the first two requirements for "relation back" under Rule 15(c) and it appears that those requirements have been satisfied.  The claims against LHM Corp. clearly arise out of the same facts alleged in the original complaint.  Further, LHM Corp. had notice of the claims within the Rule 4(m) period because counsel for LHM Corp. executed the waiver of service on defendant LHM Group's behalf in February 2004.

is broad enough to include amendments to name additional defendants without any substitution, so long as the failure to include those parties in the original complaint was due to "a mistake concerning the identity of the proper party." The following case law in the Tenth Circuit supports this construction of the Rule.

In *Anderson v. Deere & Co.*, 852 F.2d 1244 (10th Cir. 1988), the Tenth Circuit affirmed the trial court's order in a products liability action allowing plaintiff to add the manufacturer of the defective farming equipment after the statute of limitations expired. The plaintiff had originally named only the manufacturer's subsidiaries as defendants. The Tenth Circuit found that the manufacturer knew or should have known before the statute of limitations expired[11] that it was the proper defendant and would have been sued "but for a mistake concerning the identity of the proper party." *Id.* at 1247-48. Specifically, Deere & Co. knew that it had manufactured the allegedly defective piece of equipment, knew about the lawsuit against its subsidiaries, and knew or should have known that the party manufacturing the defective product is the proper defendant in a products liability case. *Id.* at 1247. The court also stated: "There is nothing in the record to indicate that within th[e] crucial time period appellants were making a strategic or tactical choice, or that they were not suing the wrong parties because of a `mistake.'" *Id.*

---

[11]Before the 1991 amendments, Rule 15(c)(3) provided that the requisite notice must have occurred within the applicable limitations period, rather than in the period provided for in Rule 4(m).

23

at 1248.[12]

In *Greenhorn v. Marriott Int'l, Inc.*, 258 F.Supp.2d 1249 (D.Kan. 2003), the plaintiff brought a Title VII action and pendent state law claims. Two of the defendants moved to dismiss the state law claims because plaintiff added those defendants after the limitations period expired. The district court rejected the defendants' argument that Rule 15(c)(3) permits a plaintiff to name a new defendant in place of an old one, but does not allow the plaintiff to add more defendants. *Id.* at 1259. The court recognized that the plain language of Rule 15(c)(3) contemplated only changes to an existing party's name or substituting one party for another; however, the court noted that the Tenth Circuit had permitted the amendment of a complaint <u>adding new plaintiffs</u> under Rule 15(c)(3). *See Brauer v. Republic Steel Corp.*, 460 F.2d 801, 804 (10th Cir. 1972). The *Greenhorn* court found that the *Brauer* case showed that "the Circuit would espouse a liberal reading of the word `changes' found in Rule 15(c)." The court thus allowed the amendment because plaintiff initially believed that the named defendant was her sole employer, but learned in discovery that the three new defendants also served as her employer under an "integrated enterprise" (single employer) or "joint employer" theory of liability. *Id.* "[P]laintiff intended from the outset to sue her employer; she simply made a mistake by (apparently) assuming that Marriott International, Inc. was her only employer." *Id.* at 1260. The court concluded that it would be unfair to deny the plaintiff the benefits of Rule

---

[12]The plaintiff did not learn about Deere & Co.'s role in manufacturing the equipment until after the statute of limitations expired. *Id.* at 1247.

15(c)(3) merely because plaintiff's counsel did not want to risk dropping the original defendant and substituting the new defendants in its place. *Id.* The court also noted that "this is not a case where the plaintiff was aware of the identity of a party but made a deliberate choice not to name that party as a defendant in the original complaint." 258 F.Supp.2d at 1260.

Wright, Miller and Kane also advocate the view that the words "changes the party" should be liberally construed to include the addition of new parties because too narrow a reading of the rule might result in the release of a party who ultimately may have proven to be liable and who would not have been prejudiced in his defense on the merits. 6A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1498, at 128-129 (2d ed. 1990).

Assuming that Rule 15(c)(3) allows for amendments that name additional parties, it is clear from *Deere & Co.*, *Greenhorn* and case law from other circuits that a plaintiff's failure to name a defendant in the original complaint is not a "mistake" when the plaintiff knew the existence and role of the potential defendant before the complaint was filed. *See Shea v. Esensten*, 208 F.3d 712, 720 (8th Cir. 2000)(holding that requirements of Rule 15(c)(3) had not been satisfied in suit by deceased employee's spouse asserting state law claims against physicians and clinic that administered employer's benefit plan based on alleged actions of physicians in refusing to refer employees to specialists due to financial incentives, thereby causing the employee's death, where plaintiff knew the identity of the proposed defendant and its status as owner of the clinic named as an

25

original defendant within the limitations period, but plaintiff chose not to sue the clinic's owner at the outset); *Powers v. Graff*, 148 F.3d 1223, 1227-28 (11th Cir. 1998)(affirming district court's order denying relation back of amendment adding defendant where plaintiff knew defendant's identity when original complaint was filed and knew that new defendant controlled one of the originally-named defendants, but plaintiff chose not to name it at that time); *Louisiana-Pacific Corp. v. ASARCO*, 5 F.3d 431, 434 (9th Cir. 1992)(denying request to add party under Rule 15(c) because plaintiff knew that proposed defendant was the party for whose actions it sought indemnity at the time complaint was filed, but made a conscious choice to sue only the entity who plaintiff thought was the successor-in-interest to the intended defendant); *Rendall-Speranza v. Nassim*, 107 F.3d 913, 918-19 (D.C.Cir. 1997)(holding that relation back provision did not apply where plaintiff failed to name proposed defendant originally because plaintiff did not think that it might be liable for her injury and proposed defendant had no reason to think that plaintiff's failure to sue it was a mistake); *Cornwell v. Robinson*, 23 F.3d 694, 705 (2d Cir. 1994)(concluding that amendment to add new defendants did not relate back under Rule 15(c)(3) because plaintiff knew their identities at time original complaint was filed and knew that those individuals had allegedly harassed and discriminated against her); *accord Nelson*, 529 U.S. at 467 n.1 (noting that a plaintiff's failure to name a defendant in the original complaint is not a "mistake" triggering the relation back provision of Rule 15(c) when plaintiff knew of the potential defendant's role and existence, but chose to assert its claim against another entity); *see, also, Miller v. Calvin*,

647 F.Supp. 199, 202 (D.Colo. 1985)(concluding that relation back did not apply in securities fraud action because plaintiffs' failure to name all directors who signed the registration statement and the entity that issued the stock as defendants in the original complaint was not a mistake where plaintiffs knew the identity of each potentially liable party, but intentionally chose to sue only some of them for strategic reasons); *Collin v. Securi Intern.*, 322 F.Supp.2d 170, 176 (D.Conn. 2004)(concluding that relation back did not apply in products liability action where plaintiff sued the manufacturer of the allegedly defective ladder, but did not assert any claims against the entity that sold him the ladder until after the limitations period expired because plaintiff knew the seller's identity at the time he filed the complaint); *In re WorldCom, Inc. Securities Litigation*, 294 F.Supp.2d 431, 449 (S.D.N.Y. 2003)(concluding that relation back did not apply to plaintiffs' claims against new underwriter defendants because "[p]laintiffs knew the identities of the Additional Underwriter Defendants, were not required to name them to make their original complaint legally sufficient, and chose not to name them").

In this case, plaintiffs filed charges of discrimination with the EEOC against "the Larry Miller Management Company d/b/a Larry Miller Toyota and Larry Miller Used Car Supermarket" (Defs' Exs. 23-25)   Respondent LHM Management Co. stated in its position statement to the EEOC that "`The Larry H. Miller Corp.- Denver' is the corporate entity that operates the Larry Miller Used Car Supermarket . . . and Larry H. Miller Toyota . . ." (Defs' Ex. 26)   However, LHM Management Co. also stated unequivocally in response to House's charge of discrimination that "Tonya House was employed by The

Larry Miller Group from March 1999 to June 11, 2001." (Plaintiffs' Response, Ex. 2)

Plaintiffs learned in the EEOC proceeding that LHM Corp. was an entity that operated Larry Miller Toyota and also knew that they had worked at Larry Miller Toyota. Further, if plaintiffs had checked the Colorado Secretary of State records, they would have confirmed that LHM Corp. was the corporate entity operating in Colorado under the trade name Larry Miller Toyota. (*See* Defs' MSJ, Ex. 10; www.sos.state.co.us/biz) Notwithstanding, plaintiffs were misled by respondent LHM Management Co.'s statement in response to plaintiff House's EEOC charge that she was employed by the LHM Group. Accordingly, although plaintiffs knew LHM Corp.'s identity at the time they filed their original complaint, they did not know about LHM Corp.'s role as their employer and reasonably relied on the respondent's statements in the EEOC proceeding that LHM Group employed them.

Further, LHM Corp. had reason to believe that its omission from the original complaint was due to a mistake, rather than because of plaintiffs' deliberate choice or trial strategy. *See* Fed.R.Civ.P. 15(c)(3)(B). Plaintiffs intended from the outset to sue their employer because a Title VII plaintiff can only recover against her employer. *See Frank*. Defendant LHM Group has taken the position consistently throughout this litigation that LHM Corp., not LHM Group, was the plaintiffs' employer. LHM Corp. has admitted the same. *See* Defendant's Supplemental Answers to Plaintiffs' Second Set of Interrogatories, attached to Defendants' Supplemental Authority, filed May 20, 2005. Defendants have also maintained that LHM Group is not a legal entity capable of being

28

sued. Thus, LHM Corp. "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against [it]."

Although it is a close question, the record supports a conclusion, under these factual circumstances, that plaintiffs made a mistake in identity in failing to name LHM Corp. as a defendant in the original complaint so that plaintiffs are entitled to the relation back provisions of Rule 15(c)(3). Plaintiffs' error was caused in large part by the confusion created by LHM Management Co. in the EEOC proceeding. I further recommend a finding that plaintiffs are not required to substitute LHM Corp. for LHM Group. Although LHM Group disputes the plaintiffs' evidence that LHM Group and LHM Corp. operated as a single employer, material factual issues exist on that issue, so that both entities are proper defendants at this time. *See Greenhorn.*

IV.

Plaintiffs request permission to file an Amended Complaint to add two additional defendants: LHM Management Co. and LHM Group of Companies. Plaintiffs assert that these entities together with LHM Group and LHM Corp. operated as a "single employer," or, alternatively, that they can be held liable under a "joint employer" theory.[13]

Defendants object to the proposed amended complaint as untimely because the deadline for joinder of parties and amendment of pleadings set forth in the Scheduling Order was May 21, 2004.

---

[13]The "joint employer" theory of liability assumes that the alleged employers are separate entities, but that both entities share or co-determine matters governing the essential terms and conditions of the plaintiff's employment. *Sandoval*, 388 F.3d at 1323-24.

Refusal of leave to amend is generally justified only upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies in prior amendments, or futility. *Frank*, 3 F.3d at 1365. It is well-established in the Tenth Circuit that untimeliness alone is a sufficient reason to deny leave to amend. *Id.* (internal citations omitted).

Plaintiffs did not seek permission to add LHM Management Co. or the LHM Group of Companies until November 23, 2004, six months after the deadline for joinder of parties and amendment of pleadings. Accordingly, plaintiffs must demonstrate good cause for the late amendment. *See* Fed.R.Civ.P. 16(b).

"Good cause" under Rule 16(b) requires a showing by the party seeking leave to modify the scheduling order to allow the proposed amendment that the scheduling order deadline could not have been met despite that party's diligent efforts. *Colorado Visionary Academy v. Medtronic, Inc.*, 194 F.R.D. 684 (D.Colo. 2000)(internal citation omitted).

Plaintiffs asserted at oral argument that good cause exists for the late amendment because: the defendant used a fictitious name; defendant failed to file a corporate disclosure statement, as required by D.C.COLO.LCivR 7.4; defendant did not disclose its entire insurance policy to plaintiffs - specifically, the names of the companies covered by the policy - until March 2005; and, defense counsel did not advise plaintiffs of its position that defendant LHM Group was not a legal entity until the motion for summary judgment was filed on November 21, 2004.

None of plaintiffs' asserted justifications for the late amendment satisfies the

30

good cause standard with respect to Larry H. Miller Management Co. and Larry H. Miller Group of Companies.   LHM Management Co. is licensed in Utah as a DBA only. (Plaintiffs' Response, Ex. 9) There is no evidence that LHM Management Co. or LHM Group of Companies is a trade name for LHM Corp., nor have plaintiffs submitted any documentation or other evidence to show that defendant LHM Group has any parent entities or that it has issued stock, so that it is was required to comply with D.C.COLO.LCivR 7.4 before the deadline for amendment passed.[14]   Further, although plaintiffs apparently did not receive the listing of the Larry H. Miller entities covered by the employment practices liability policy held by the LHM Group of Companies until March 2005, that listing does not even mention the Larry H. Miller Management Co. (*See* Ex. to Defs' Response to Plaintiffs' Mot. to Strike).   Finally, plaintiffs do not explain why defendant LHM Group's position that it is not a legal entity, communicated to plaintiffs in July 2004,[15] constitutes good cause for their failure to add the LHM Management Co. and the LHM Group of Companies as defendants by May 21, 2004.   Defendant LHM Group advised plaintiffs in February 2004 of its position that LHM Group was not the plaintiffs' employer.[16]  Accordingly, I recommend a finding that plaintiffs have failed in their attempt

---

[14]D.C.COLO.LCivR 7.4 requires a non governmental corporate party or other legal entity to file a statement with the court identifying "all its parent entities and listing any publicly held entity that owns ten percent or more of the party's stock."

[15]*See* Defendants' Supplemental Answers to Plaintiffs' Second Set of Interrogatories, signed July 20, 2004, attached to Defendants' Supplemental Authority, filed May 23, 2005.

[16]LHM Group stated in its February 5, 2004 Answer, at ¶5, that "the correct name of the entity that employed the Plaintiffs is `The Larry H. Miller Corp. - Denver."

to satisfy the Rule 16(b) good cause standard for a late amendment adding LHM Management Co. and LHM Group of Companies.

Moreover, plaintiffs named the Larry H. Miller Management Co. as the employer-respondent in the EEOC proceeding. Tony Schnurr is a senior vice president for LHM Management Co. and he made the decision to terminate plaintiff Pulse's employment and "is a subject of the underlying retaliation claims." *See* Plaintiffs' Response to MSJ, Ex. 11; Plaintiffs' Response to Supplemental Authority, filed May 25, 2005, at 3. Plaintiffs do not contend that they discovered Schnurr's role in the alleged discriminatory and retaliatory actions after the amendment deadline passed, or that they were unaware of his position as vice president for LHM Management Co. during the critical time period. Accordingly, plaintiffs had reason to believe that the LHM Management Co. might be liable as an "employer" on their Title VII claims before they filed this lawsuit. I recommend a finding that plaintiffs have failed to demonstrate "good cause" for their failure to add LHM Management Co. as a defendant before expiration of the Scheduling Order's deadline for amendment of pleadings.

I further find that plaintiffs have failed to establish good cause for their failure to timely add the Larry H. Miller Group of Companies as a defendant. Plaintiffs conceded at oral argument that defendant LHM Group and proposed defendant LHM Group of Companies are one in the same; therefore, the proposed amendment is superfluous. However, even if LHM Group and the LHM Group of Companies have distinct identities, and assuming that LHM Group of Companies is a legal entity capable of being sued,

32

plaintiffs knew that the LHM Group of Companies was a potential defendant long before the Scheduling Order deadline because that "entity" issued an Employee Handbook to the plaintiffs. (Plaintiffs' Response to MSJ, Ex. 20) Further, the "Acknowledgment for the Handbook" signed by each plaintiff was titled "Larry H. Miller Group of Companies," Defs' Exs. 17, 20, as was the employment application that plaintiff House completed in May 1999. (Defs' Ex. 16) Thus, plaintiffs had information that the LHM Group of Companies might be liable to them as their "employer" before the commencement of this suit and have failed to show good cause for their failure to join that "entity" as an additional defendant by the court-ordered amendment deadline.

Accordingly, I recommend that plaintiffs' motion for leave to amend the complaint to assert their Title VII claims, and their supplemental defamation claim, against LHM Management Co. and the LHM Group of Companies be denied as untimely.[17]

V.

For the reasons set forth above, it is

**RECOMMENDED** that Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment [filed November 1, 2004] be **DENIED**.  It is

**FURTHER RECOMMENDED** that Plaintiffs' 56(g) Motion to Strike Affidavit [filed February 14, 2005] be **DENIED**.  It is

**FURTHER RECOMMENDED** that Plaintiffs' Motion for Leave to File Amended

---

[17] I need not reach defendants' contention that the proposed amendment is futile because plaintiffs' Title VII claims against these new parties are time-barred and do not relate back to the original Complaint under Fed.R.Civ.P. 15(c)(3).

33

Complaint [filed November 23, 2004] is **DENIED**.  Although plaintiffs have not filed an amended pleading stating claims and a demand for judgment against LHM Corp., as required by Fed.R.Civ.P. 8(a), a Final Pretrial Order has been entered in this action. The Final Pretrial Order asserts Title VII and defamation claims against LHM Corp., but also, in large part, rehashes the parties' summary judgment arguments.  Accordingly, it is

**FURTHER RECOMMENDED** that if the District Judge adopts the Recommendation, the parties should be ordered to participate in another Pretrial Conference and to submit a revised Pretrial Order to the court.

**Within ten days after being served with a copy of the proposed findings and recommendation, any party may serve and file written objections to the proposed findings and recommendation with the Clerk of the United States District Court for the District of Colorado.  The district judge shall make a de novo determination of those portions of the proposed findings or specified recommendation to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the proposed findings or recommendations made by the magistrate judge.  The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.**

**Failure to make timely objections to the magistrate judge's recommendation may result in a waiver of de novo review of the recommendation by the district judge**

**and may also waive the right to appeal from a judgment of the district court based on**

**the findings and recommendations of the magistrate judge.**

Dated June 20, 2005.

BY THE COURT:

s/ Patricia A. Coan
PATRICIA A. COAN
United States Magistrate Judge

35